## CONVEYANCE OF LAND HELD TO HAVE BEEN A MERE SECURITY FOR A LOAN.

Court of Appeals for Hamilton County.

OTTO KRIPPENDORF v. HELEN M. ORMSBY; THREE CASES.

Decided, July 19, 1915.

*Embarrassed Owner of Land—Desiring to Free it from Liens Executes a Deed which is Held to Have been a Mortgage—Trust Relation Between Attorney and Client—Action for Recovery of Land an Action in Equity.*

1. A suit to construe and enforce a contract, with an accounting thereunder, a reconveyance of land and general relief, is an action in equity, triable to the court and not to a jury, and the reference of such a case to a master commissioner is within the discretion of the court.

2. Where it appears that the whole purpose of a contract for the conveyance of land was to raise money for the relief of the owner, with a provision that upon its repayment there should be a conveyance back, the contract will be treated as security for the loan and the deed of conveyance as a mortgage; and where the petition sets out the salient terms of the contract, and in effect states that it is one for a redemption although in terms it asks for a reconveyance of the land, and the trust relation of attorney and client also appears, a court will not hesitate to decree a reconveyance of the land.

*J. M. Dawson,* for Krippendorf.
*J. C. Martin* and *Wm. M. Fridman,* for Helen M. Ormsby.
*Young & Young,* for Geo. S. Ormsby.

JONES (Oliver B.), J.; JONES (E. H.), J., and GORMAN, J., concur.

Three proceedings in error have been brought in this court, growing out of an action in the Superior Court of Cincinnati in which the defendant in error was plaintiff, and the plaintiff in error was defendant, and in which plaintiff sought to require the defendant to reconvey to her certain real estate which she had conveyed to him under a certain contract in accordance with the

terms of which he was to advance certain money and out of it to pay certain liens upon said real estate, and to hold and rent same and out of the income pay taxes, make repairs and improvements, and at the end of three years, upon repayment to him of the amount advanced, to reconvey said real estate to her.

The University of Wooster was made party defendant and filed a cross-petition setting up a mortgage made by the defendant below to it to secure a loan of $5,000 upon lot 49, which was the improved portion of said real estate, and a judgment was afterwards entered on said cross-petition finding the amount due under said mortgage and ordering the foreclosure of same and sale of the premises covered by the mortgage on the failure to pay the amount so found due.

The case proceeded as between the original plaintiff and defendant, and was heard upon her second amended petition, the answer of defendant thereto, and the reply to said answer. Upon said hearing the court decided in favor of the plaintiff and found upon the evidence that the allegations of her second amended petition were true, and that she was entitled to have the contract performed by the defendant and its provisions enforced against him, and that she was entitled to have a reconveyance of all the property mentioned in said contract, and, excepting the mortgage to the University of Wooster, free from all encumbrances, upon the payment by her of such sums with interest as had been advanced by defendant upon her account under said contract; and for the purpose of stating an account showing the amount so due from plaintiff to defendant the court appointed Murray M. Shoemaker as a master commissioner with all the power of a referee, to take such an account and to ascertain and report to the court the amount so due to the defendant.

The first proceeding in error, No. 304, seeks to set aside this judgment as being erroneous and invalid, and questions the power of the court to appoint a master commissioner as therein provided.

The cause is one in equity, being a suit to construe and enforce a contract and for an accounting thereunder, for a decree for the re-conveyance of land and for general relief. These are all matters triable to a court and not to a jury, and come within

the provisions of Section 11490, General Code. Under this section reference to a master commissioner is discretionary with the court, and in this case the court has in no way abused its discretion.

The second proceeding in error, No. 461, was brought for the purpose of reviewing the final judgment and decree of the superior court which was entered in said case upon the report and finding of the master commissioner and referee appointed therein and which fixed the amount ordered paid by the plaintiff to the defendant in full satisfaction of all amounts advanced and paid by him under said contract, and provided that upon such payment by the plaintiff said defendant should reconvey all of said real estate free and clear of all incumbrances.

In this proceeding in error a complete bill of exceptions was filed, but the original pleadings and papers having been filed in the first case, No. 304, were not refiled herein but only such papers as had been filed in the lower court subsequent to the original proceedings in error. And the transcript of the docket and journal entries in the lower court filed in this second case included only those subsequent to Feb. 2, 1914—being a continuation of the transcript filed in case No. 304. As each of these proceedings in error is technically distinct from the other, there might be a question as to the power of the court to consider one case as merely a supplement of the other, but as the main question involved is the same in both cases, they will be treated together and considered as one.

The third proceeding in error, No. 577, involves the right of a judgment debtor in a foreclosure suit to insist upon a sale under decree of foreclosure and order of sale, contrary to the wishes and right of the judgment creditor who is the owner of said judgment and mortgage.

A decree in foreclosure was taken upon the cross-petition of the University of Wooster under its mortgage made to Otto Krippendorf upon Lot 49, part of the real estate involved in said contract, and an order for sale had been issued upon the precipe of the attorneys for the University of Wooster and the property was advertised thereunder for sale by the sheriff, whereupon George S. Ormsby, the father of Helen M. Ormsby,

for her protection and assistance purchased from the University of Wooster all its interests under said mortgage and judgment and recalled said order for sale. Afterwards, Otto Krippendorf, the judgment debtor in said decree of foreclosure, without authority from or notice to said George S. Ormsby or the University of Wooster, filed a precipe for a second order of sale, which was issued by the clerk, and sale was advertised thereunder by the sheriff. Upon motion George S. Ormsby was made party defendant, and he made application to the court for an order to set aside and recall the second order of sale which had been issued at the instance of said defendant Otto Krippendorf; which motion upon hearing the court granted, and made an order setting aside and recalling said second order of sale. Said defendant Otto Krippendorf also moved the court to require said George S. Ormsby to give security for costs, he being a nonresident of Hamilton county, Ohio. This motion was denied by the court on the ground that it appeared to the court that Ormsby was the owner of the mortgage and judgment interest in said real estate, which afforded ample security for costs. To this order the defendant Krippendorf also excepted.

The third proceeding in error was brought to secure a reversal of these two orders. In the opinion of this court the action of the court below upon both of said motions was both proper and legal. But neither of said orders is a final order which can be reviewed by proceedings in error by this court, and the petition in error in case No. 577 will therefore be dismissed at the costs of plaintiff in error.

The main question in the first and second proceedings in error is as to the correctness of the judgment below finding the equities in favor of the plaintiff.

The evidence shows that Mrs. Ormsby being the owner of a handsome dwelling on the lot known as No. 49 of the Foote Subdivision, was in embarrassed circumstances, a decree of foreclosure having been taken upon the mortgage on said property by the University of Wooster, and it was about to be sold to satisfy the judgment of such foreclosure; that other judgments had been taken against her for money; and the taxes on said

property were unpaid. When in search of assistance towards the raising of money necessary to adjust her financial difficulties she met Otto Krippendorf, who is an attorney at law and who agreed to act for her as such and to advance money necessary to prevent the sacrifice of her home. To effect this purpose it was agreed that Krippendorf would raise money to the amount of $7,500; that a conveyance of said Lot No. 49, together with three other lots, would be made to him by Mrs. Ormsby; and that out of the $7,500 he was to pay all tax claims on lot 49, the court costs and judgment in said foreclosure case brought by the University of Wooster, and certain improvements to the premises on lot 49; and the form of contract to this effect was drawn by said Krippendorf and executed by Mrs. Ormsby and Krippendorf in the presence of two witnesses, and duly acknowledged by both of them before a notary public.

It appears from the evidence that by virtue of this contract, and a deed made at the same time as a part of the same transaction by Mrs. Ormsby to Mr. Krippendorf, her title in said four lots was vested in Krippendorf who was then acting as her attorney and trustee under the terms of said contract. The sheriff's sale in the foreclosure case of the Trustees of the University of Wooster was confirmed and a deed was executed by the sheriff conveying lot 49 to the Trustees of the University of Wooster, who, carrying out an arrangement previously made with Mrs. Ormsby, received at the hands of Krippendorf sufficient money to pay the court costs and tax claim and to reduce their indebtedness from Mrs. Ormsby down to $5,000 for which Krippendorf executed a mortgage to them upon said lot 49.

By the terms of said contract Krippendorf agreed to reconvey to Mrs. Ormsby, upon the termination of said term of three years, to-wit, on the 6th day of May, 1912, the same interest in said four lots provided she pay to him in gold coin the principal sum of $5,000 and interest and $2,500 and interest, together with all incidental sums by way of taxes, assessments, interest on mortgages, charges for improvements or otherwise, and interest at 6% per annum from the date of maturity. The contract further gave to Mrs. Ormsby during its existence a

right to accelerate a reconveyance of said property providing she assume and take subject to the mortgage of $5,000 and all other claims and demands growing out of the contract.

A careful consideration of this contract in connection with the evidence given shows that its whole purpose, and the purpose of the conveyance made by Mrs. Ormsby to Krippendorf, was simply to furnish the means for securing money, which he agreed to raise and advance on her account. In other words, this so-called contract was in fact a mortgage. The conveyance was undoubtedly made to him by her and at her request by the Trustees of the University of Wooster, for the purpose of vesting title in him as her trustee for her benefit, and at the same time to secure him in the repayment of any money necessary to be advanced by him. Although the contract is drawn in an involved and extremely vague way, it shows evidence of having been prepared either by a lawyer who was without sufficient experience to clearly state what was intended to be contained in it, provisions to furnish proper security for himself in advancing funds and at the same time protect the rights of his client who was to be the beneficiary of such advancement—or else it was the product of a crafty and unscrupulous lawyer, who, seeking to take advantage of a confiding client ignorant of such documents, at the end of her resources and eager to find a way out of her financial difficulties, created a document under which he might, if occasion arose, claim to be the absolute owner of the property and hold her to the exact time fixed for reconveyance under the strict letter of the contract in the manner of an historical Shylock.

The fact that Krippendorf failed in any way to report his expenditures to Mrs. Ormsby or to furnish to her an account of the amount of his advancements under the contract, and that he failed to keep the property rented or in repair, and the further fact that the value of the property has largely appreciated, taken in connection with his testimony as given in this case, places him in anything but a favorable attitude before the court. He had hardly signed the contract under which he appeared as the friend and benefactor of Mrs. Ormsby until he laid plans to

repudiate it, and his testimony indicates a constant effort on his part to retain for himself the property which he obtained as a trustee for a client, and, failing to hold it, to require her to pay the largest sum possible to him in excess of all advancements and interest.

There is no question but that this contract was drawn as a security for a loan or advancement to be made by Krippendorf on behalf of Mrs. Ormsby and, under the doctrine of the case of *Wilson* v. *Giddings,* 28 O. S., 554, it must be held to be a mortgage. As was stated in the opinion of the court in that case, at page 565:

"There is no principle in equity more firmly settled on authority than that every contract for the security of debt, by the conveyance of real estate, is a mortgage, and that all agreements of parties tending to alter, in any subsequent agreement, the original nature of the mortgage, is of no effect. * * *

"The rule is general that where a contract and conveyance are made upon a negotiation for a loan of money, a court of equity will always construe the conveyance to be a mortgage, whatever may be the form of the contract. * * *

"Whatever form the transaction assumes; whatever covenant there may be in the conveyance, or in an agreement accompanying it, if it was founded upon a loan of money, and intended by the parties to be a mortgage, courts of equity will always so construe it."

It is not necessary to multiply authorities to sustain the principle that once a mortgage is always a mortgage.

Nor is it necessary to cite cases that a party occupying a trust relation can not take advantage of his position.

Counsel for plaintiff in error concedes both of these propositions, but he relies upon a criticism of the pleadings and insists that a technical meaning be placed upon them. It is true that the petition does not in terms declare the so-called "contract" to be a "mortgage," but it does set out the salient terms of the contract, and does in effect state a cause of action for a redemption of a mortgage although in terms it asks for a reconveyance of real estate under the terms of the contract, praying for specific performance, and at the same time praying for general relief.

It is true that the petition does not set out the relation of attorney as existing between Mr. Krippendorf and Mrs. Ormsby, but it does set out enough of the terms of the contract to show that he held this real estate as her trustee with an obligation to reconvey to her.

It is also true that the reply undertakes improperly to set out this relation of attorney and client as between these parties. Such an allegation in the reply can not be considered as enlarging the case of the plaintiff as made by the petition. *Hilsinger* v. *Trickett,* 86 O. S., 297.

But as stated above, the trust relation sufficiently appears from the allegations of the second amended petition.

The action being in equity and the prayer for relief being a general one, the court has jurisdiction to grant relief warranted by the facts as proven. 195 U. S., 427; 143 Fed., 22; 208 Fed., 295; 210 Fed., 696; 16 Cyc., 106 C.

The defendant below contends that under a strict construction of the contract upon which he relies Mrs. Ormsby failed to perform her obligations to convey to him, as provided by paragraph 8, said real estate, free and clear of all claims, demands and incumbrances. From the fact that he drew the quit-claim deed, which she executed, at the same time as the contract and that he did not ask for any other deed or further conveyance from her, it must be held that the quit-claim deed then executed by her was substituted in place of the deed referred to in paragraph 8. It is natural to believe that, in her harassed and helpless condition she relied upon him to free her property from its incumbrances, and clearly did not intend to obligate herself to first free it from incumbrances for the privilege of conveying it to him in order that he might hold the title entirely free except for the mortgage to be placed on it by him for $5,000 to the University of Wooster.

The construction of the contract claimed by the defendant is contrary to the evidence and contrary to its own terms. The unreliable and contradictory statements given by the defendant in his testimony with regard to the $2,000 consideration named in the deed from Mrs. Ormsby to himself lead us to give doubtful credence to his testimony, and to feel that he will be amply

repaid in the amount found by the court below to be due him for advancements.

In this amount was included a $500 attorney fee, as fixed by paragraph 5 of the contract. It should be observed that nowhere in the contract does Mrs. Ormsby agree to pay this fee, nor is it in any way made a charge upon said real estate or considered as one of the advancements to be made by Krippenlorf under the contract. The evidence shows that his fee was only for services rendered in connection with this real estate and the making and performance of this contract. It is extremely doubtful whether, under all the circumstances of the case, such an allowance should be made, but as no objection was made by plaintiff below to its allowance and as there is no cross-petition in error in this case on behalf of Mrs. Ormsby, we have concluded not to disturb the finding as made by the master commissioner and confirmed by the trial court.

A careful consideration of the numerous points of error relied upon by plaintiff in error convinces us that there is no prejudicial error shown by the record as against him, but that substantial justice has been done.

The judgment below is therefore affirmed.