Decided January 6, 1988

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## COMMONWEALTH TRIAL COURT

N. S. FIDELINO, et al.,               )     CIVIL ACTION NO. 86-381
                                      )
              Plaintiffs,             )
                                      )
         vs.                          )     MEMORANDUM OPINION
                                      )
ALAN SADHWANI, et al.,                )
                                      )
              Defendants.             )
_____  )

### FACTS

On May 30, 1984 a Contruction Contract Agreement (the "contract") was entered into between N.S. Fidelino dba Saipan Engineering and Construction, Inc. (Fidelino) and K. Sadhwani's Inc. (Sadhwani) for the construction of a concrete commercial building in Chalan Kanoa, Saipan.

Sadhwani agreed to pay a total of $60,000 for construction of the building pursuant to a progress payment schedule which called for payment of $20,000 upon completion of the floor slab and walls, $15,000 upon completion of the roof slab, and $25,000 upon completion of the entire project. Liquidated damages of $50 per day were also provided for in the contract if the project was not completed by September 15, 1984.

**284**

On June 7, 1984 Fidelino assigned his right to payment under the contract to Transamerica Corporation (Transamerica).*

On July 9, 1984 the floor slab and walls of the building were completed. This increment was approved by Sadhwani and his architect, Frank Martin, and Fidelino was paid $20,000.

On September 4, 1984 the roof slab was completed and approved and Fidelino was paid $15,000.

In December, 1984, construction of the building was completed. Defendant occupied the building and commenced commercial operations therein. On December 17, 1984 defendant released Fidelino's performance bond. On January 25, 1985 defendant paid Fidelino $10,000 of the remaining $25,000 due under the contract.

Thereafter, it was discovered that a portion of the building encroaches on an adjacent lot. Defendant subsequently refused to pay the remaining $15,000 due under the contract.

On February 19, 1985 Fidelino wrote a letter to Herman's Modern Bakery in which he characterized defendant's overdue account of $15,000 as an "uncollectable (sic) account."

---

*By virtue of the assignment, Transamerica stands in the shoes of Fidelino. Thus any defenses Sadhwani has against Fidelino on the construction contract are available against Transamerica. For ease of discussion, reference will be made only to Fidelino in most cases.

285

Plaintiffs Fidelino and Transamerica have brought suit to compel payment of the $15,000 due from defendant Sadhwani under the contract. Defendant has counterclaimed contending that Fidelino was negligent in construction of the building in that a portion of the building was constructed on a lot not controlled by defendant. Additionally, defendant claims plaintiff's work is defective and that he will have to have corrective work done, all to his damage. Defendant also claims that the building was not completed within the time stipulated by the contract and plaintiff Fidelino is liable for liquidated damages under the contract. Defendant further contends that plaintiff Fidelino's letter characterizing the $15,000 allegedly owed by defendant under the contract as an uncollectible debt amounted to libel.

ISSUES

**I. WAS FIDELINO NEGLIGENT IN THE PLACEMENT OF THE BUILDING?**

Defendant contends that he is excused from payment of the final $15,000 due under the contract as Fidelino negligently located a portion of the building on the property of another forcing defendant to spend additional money renting this strip of property.

The four elements necessary for recovery on this negligence claim are:

　　1. Existence of a duty on the part of Fidelino;

**286**

2. A breach of that duty;

3. Existence of a causal relationship between plaintiff's conduct and defendant's injury; and

4. A resulting injury to defendant.

See Spurlin v. GMC, 528 F.2d 612, 615 (5th Cir., 1976).

The threshold question then is whether plaintiffs had a duty under the contract to survey the lot prior to beginning construction of the building.

Generally, the intent of the parties to a contract can be inferred from the face of the instrument itself. Jewel Co., Inc. v. Payless Drug Stores, 741 F.2d 1555, 1565 (9th Cir., 1984). A court is required to determine the obligations of the parties to a contract by careful examination of the four corners of the document. First Nat'l Bank of Jackson v. Pursue Energy Corp., 784 F.2d 659, 662 (5th Cir., 1986). Absent ambiguity, the words of the contract are generally the sole indicators of what the parties intended. Illinois Bell Telephone Co. v. Reuban H. Donnelley Corp., 595 F.Supp. 1192, 1197 (N.D. Ill., 1984).

The contract, and documents incorporated therein, between plaintiff Fidelino and defendant Sadhwani makes no reference, either inferred or implied, to any duty or obligation on plaintiff's part to conduct a survey. Thus, the contract cannot be said to have created any duty on plaintiff's part to conduct a survey.

**287**

In interpreting the contract, the court is bound to give effect to the intention of the parties; such intentions are to be shown as much as possible from the language of the agreement, but where the agreement is silent on an issue the court may turn to extrinsic evidence for support. Valley Cement Ind., Inc. v. Midco Equip. Co., 570 F.2d 1241, 1242 (5th Cir., 1978), rehearing denied, 573 F.2d 308. Since the contract makes no mention of a survey, the court has examined the testimony of witnesses in order to determine if plaintiffs owed defendant any duty to conduct a survey.

At trial, Steve Sankey, an architect, testifying as defendant's expert witness, noted that while a contractor may not be contractually obliged to conduct a survey, a contractor does have a duty to ascertain the boundary lines of the property if there is any question as to the location of these boundary lines. Accordingly, the contractor Fidelino would have a duty to survey the property if he were put on notice that there was a question as to the boundary lines.

The owner of the property, Mariana D. San Nicolas, testified at trial that Fidelino, defendant Sadhwani, Frank Martin, and she visited the property in May of 1984 for purposes of determining the boundaries. Mrs. San Nicolas testified that she told the men that her father had planted a line of coconut trees on the northern border and a line of betel nut trees on the southern border of the property in order

288

to clearly delineate the boundaries. Testimony by Fidelino indicated that he was instructed by defendant Sadhwani to construct the building between the two rows of trees.

Plaintiff then staked out the area which the proposed building would encompass. Defendant and his architect both visited the site and saw exactly where plaintiff planned to erect the building. The stakes were placed exactly where defendant requested they be located and at no time prior to the completion of the building did defendant ever voice any concern as to the location of the building.

When the building was completed in December, 1984, defendant occupied it immediately, released Fidelino's performance bond, and made a partial payment of $10,000 of the $25,000 remaining due under the contract.

The court finds Fidelino did not breach any duty to defendant. Fidelino had no duty under the contract to conduct a survey. In performing under the contract plaintiff merely did what defendant and his architect told him to do. In sum, following defendant's specific instructions cannot be characterized as a breach of duty and there is no liability by Fidelino to Sadhwani for the placement of the building.

II. IS PLAINTIFF LIABLE FOR DELAY IN COMPLETING THE BUILDING?

Defendant maintains that since the building was not completed by September 15, 1984, he is entitled to liquidated

**289**

damages. Evidence indicates that plaintiffs completed work on the building on December 4, 1984.

Liquidated damages will not be awarded where the party seeking them has contributed or is responsible for the failure to perform within the prescribed time.

> Peter Kiewit Sons' Co. v. Pasadena City Jr. College Dist. 59, 379 P.2d 18, 21 (Cal., 1963); U. S. v. United Engineering and Contracting Co., 234 U.S. 236, 243, 34 S.Ct. 843, 845, 58 L.Ed. 1294 (1914).

The court finds that the delay in the completion of the building was contributed to by Sadhwani. He was to supply certain materials and supplies and did not timely ship them from Guam to Saipan. This delayed Fidelino in the construction and it is concluded the defendant is not entitled to liquidated damages.

### III. IS THE DEFENDANT ENTITLED TO DAMAGES TO CORRECT DEFECTS IN THE CONSTRUCTION OF THE BUILDING?

The defendant has produced testimony of defects in the construction of the building. These defects are demonstrated in certain exhibits and include cracks in walls, windows, and door frames as well as plastering problems. It is estimated it will cost $12,402 to correct these problems. The testimony and evidence adduced on this subject was largely unrebutted by the plaintiff. Pictures of the building substantiate the defects and the claim of $12,402 will be allowed.

## IV. DID THE PLAINTIFF LIBEL THE DEFENDANT?

Defendant has counterclaimed against plaintiff Fidelino for libel and defamation claiming that a May 23, 1985 letter written by Fidelino to Herman's Modern Bakery, identifying defendant as an uncollectible account was false and intentionally made to disparage the business of defendant. Fidelino admits writing said letter but maintains that the allegations contained therein are true.

Restatement, Torts 2d, § 558 states that:

> To create liability for defamation there must be:
> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement, Torts 2d, § 581A reads as follows:

> One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true.

Here Fidelino published a statement alleging that the $15,000 due under his contract with defendant was uncollectible. Fidelino thereafter initiated this suit for the

**291**

sole purpose of collecting on this account. Defendant has advanced various reasons as to why he should not be liable for this debt but the fact remains that the $15,000 has not been paid on the contract and Fidelino has, as yet, not been able to collect. In short, the debt has been uncollectible.

Comment d to § 581A notes that "[t]ruth of a defamatory statement of fact is a complete bar to recovery not only in an action for harm caused to another's reputation, but also in an action for nominal damages only, for purposes of vindicating the plaintiff's reputation by a verdict that brands the defamatory statement untrue."

Comment f to § 581A goes on to say that "[i]t is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance."

In the present action, the court finds that the statements published by plaintiff Fidelino were substantially true and therefore, there is no basis for a finding of defamation.

## THE NET RESULT

The parties have stipulated that $2,177.74 is due defendant by Fidelino for the claims encompassed in Count Three of the counterclaim of the defendant. The claim of $350.00 for surveying services is withdrawn by the defendant. Only the

292

charges of $448.00 and $834.90 for construction materials are chargeable against Transamerica since the other items are outside of the scope of the construction contract.

Thus, the $15,000 due plaintiff (Transamerica) is reduced by the amount of $12,402.00 and $1,282.90 or $13,684.90, leaving a balance of $1,315.10 due. Fidelino owes defendant $349.14 for returned checks and $544.90 for a typewriter for a total due of $894.04.

Neither party shall receive costs of suit.

This Opinion shall constitute the findings and conclusions of the court.

Dated at Saipan, MP, this 6th day of January, 1988.

Robert A. Hefner, Chief Judge